IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>(1) HILAND DAIRY FOODS COMPANY, LLC,<br><br>    Defendant. | Case No. CIV-21-483-HE<br><br>Demand for Jury Trial |

## COMPLAINT

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act, as amended, ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Bryan Berry, who was adversely affected by such practices. As alleged with greater particularity below, Defendant Hiland Dairy Foods Company LLC violated the ADA by failing to hire him because of his disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which

1

incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Oklahoma.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been an employer engaged in industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7).

5. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Bryan Berry timely filed a charge of discrimination (Charge No. 564-2017-00814) with the Commission. Berry's charge alleged violations of Title I of the ADA by Defendant.

7. The Commission sent Defendant timely notice of Berry's charge.

8. On September 2, 2020, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated the ADA.

9. The Letter of Determination invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. On October 1, 2020, the Commission issued a Notice of Failure of Conciliation to Defendant.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

14. Bryan Berry is a qualified individual with a disability as defined under the ADA. Since birth, Berry has suffered from non-degenerative cone dystrophy, an impairment which substantially limits his major life activities and the functioning of his bodily systems, including but not limited to his ability to see and drive and the operation of his eyes. To manage this condition, Berry uses learned, adaptive behaviors and assistive technology.

15. On or about February 24, 2017, Berry applied for the position of Dairy Plant Worker at Defendant's Norman, Oklahoma plant.

16. In his interview with Plant Manager Claudio Moreno, Berry voluntary disclosed his disability and the two performed a short tour of the plant and discussed how Berry could perform the job notwithstanding.

17. Defendant extended Berry a conditional offer of employment as a Dairy Plant Worker Dairy Plant Worker/Cooler Load-out Person contingent on Berry passing a medical exam.

18. On March 10, 2017, Defendant conducted its pre-employment exam of Berry using Norman Regional Occupational Health ("the clinic"), a third-party medical provider.

19. As part of this post-offer, pre-employment exam, Berry submitted

to and passed a functional capacity/lift test and completed a health history form in which he disclosed "Rod-cone dystrophy since birth" (subsequently determined to be only "cone dystrophy.").

20. Berry also submitted to a physical exam and vision screening administered by a clinic nurse.

21. Based on Berry's numerical scoring and results during the exam, Berry was determined by Kevin Penwell D.O. of NRH Occupational Medicine, who neither examined nor met with Berry, to be legally blind and color-blind.

22. Defendant did not provide the clinic with any written minimal visual standards for the Dairy Plant Worker job.

23. Clinic nurse and office manager, Sharon Miller, telephoned Defendant's office manager and HR liaison, Twila Rogers, to ascertain the visual requirements for the position.

24. Rogers verified to Miller that she did not believe that someone who is legally blind and color-blind could do the Dairy Plant Worker job.

25. Based on this information from Miller, Dr. Penwell made the medical determination that Berry did not meet Defendant's vision qualification for the position.

26. In making his medical determination,

    A. Dr. Penwell, who is not a vision specialist, understood Berry's specific impairment, non-generative rod-cone

    dystrophy, to be a birth defect that affects vision to varying degrees and does not worsen;

  B. Dr. Penwell did not inquire about, evaluate or consider Berry's disability-related limitations nor his actual functional and adaptive visual ability in the context of the essential functions of the job; and

  C. Dr. Penwell did not perform an individualized assessment of whether one or more reasonable accommodation would enable Berry to perform the essential functions of the job.

27. The clinic faxed Rogers a copy of Berry's medical exam and informed Berry that he had failed the exam.

28. Upon receipt of the exam, Rogers informed General Manager Randy Richison that Berry failed his physical exam.

29. Based on the medical exam finding, Richison decided not to hire Berry. Richison did not consult Dr. Penwell nor Defendant's HR Department before making his decision.

30. Also on March 10, following news of his medical disqualification, Berry returned to Defendant's facility and met with Moreno and Richison.

31. Richison told Berry that, as a matter of policy, he could not hire him simply because he did not pass the vision screen of the physical exam and that he may trip and fall and break his leg.

32. Berry advocated he could do the job and, in response, Richison asked Moreno to give Berry a tour of the plant for the alleged purpose of convincing Berry he would not want the job.

33. During the tour, Berry demonstrated to Moreno that he was able to safely observe and navigate the plant floor, use equipment, and identify different product. The only obstacle Berry encountered was an inability to read, without assistance, a dot-matrix-printed form with faint, fine print.

34. Following the tour, Berry was more confident than ever that he could successfully perform the job with reasonable accommodation.

35. Berry told Richison that he could perform the job. For example, he said he could maneuver about the plant floor and distinguish and identify products, that the dim lighting in the plant actually allows him to see better, and that he has better than average peripheral vision.

36. Moreno pointed out that Berry had failed to read the small print order form, but Berry explained he could do so if allowed to enlarge or magnify the print.

37. Seizing on Moreno's one critical observation of Berry, Richison leaned over his desk and, in a mocking manner, said, "where are you going to keep it? In your pocket?! There is no glass allowed in the production area."

38. Both Richison and Moreno wore eyeglasses on the plant floor, and equipment on the plant floor incorporated both glass and non-brittle plastic.

39. Berry attempted to explain how he could read the small print with assistive devices or come into work early (off-the-clock) to use Hiland's copier to enlarge the forms for his shift, but Richison rejected the proposals out of hand, stating "there was no time" in the job for any of Berry's proposed accommodations.

40. Defendant withdrew the conditional offer of employment and refused to hire Berry.

41. Defendant could have reasonably accommodated Berry's disability, without any undue hardship, so that he could perform the job.

42. Defendant did not engage in an interactive process to determine whether it was possible to provide a reasonable accommodation to Berry.

## STATEMENT OF CLAIMS

### (ADA – Failure to Hire)

43. Plaintiff repeats, re-alleges, and incorporates by reference in the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

44. Berry is a qualified individual with a disability as defined in the ADA because he has a physical impairment and/or a record of impairment that substantially limits one or more major life activities, including but not limited to seeing and driving, and/or the operation of a bodily organ, his eyes. 42 U.S.C. § 12102.

45. Defendant was aware of Berry's disability.

46. Berry is qualified and able, with reasonable accommodation, to perform the essential functions of the position of Dairy Plant Worker/Cooler Load-out Person at Defendant's Norman plant.

47. Defendant was aware that Berry required one or more reasonable accommodations to perform the essential functions of the Dairy Plant Worker/Cooler Load-out Person position.

48. Defendant engaged in unlawful employment practices at its Norman, Oklahoma plant in violation of Section 102(a) and (b)(5)(B) of Title I of the ADA, 42 U.S.C. §12112(a) and (b)(5)(B), by intentionally refusing to hire Berry, a qualified individual with a disability, as a Dairy Plant Worker/Cooler Load-out Person on the basis of disability and because he needed reasonable accommodation to perform the essential job functions.

49. Providing Berry with one or more reasonable accommodations in order to allow him to safely perform the Dairy Plant Worker Dairy Plant Worker/Cooler Load-out Person job would not have imposed an undue hardship on the operation of Defendant's business.

50. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Berry.

51. The effect of the practices complained of herein has been to deprive Berry of equal employment opportunities and otherwise adversely affect his status as an applicant for employment because of his disability.

52. As a direct and proximate result of the practices complained of in the foregoing paragraphs, Berry has suffered actual pecuniary and non-pecuniary damages, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from refusing to employ a qualified individual with a disability because he or she needs a reasonable accommodation to perform the duties of his or her position.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Bryan Berry, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the

effects of its unlawful employment practices, including but not limited to rightful place instatement of Bryan Berry.

    D.    Order Defendant to make whole Bryan Berry by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

    E.    Order Defendant to make whole Bryan Berry by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, humiliation, embarrassment, loss of self-esteem, anxiety, stress, and loss of enjoyment of life, in amounts to be determined at trial.

    F.    Order Defendant to pay Bryan Berry punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

    G.    Grant such further relief as the Court deems necessary and proper in the public interest.

    H.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

LISA MORELLI
Acting Associate General Counsel

ANDREA G. BARAN
Regional Attorney

C. FELIX MILLER
Supervisory Trial Attorney

/s/ Patrick J. Holman
PATRICK J. HOLMAN
Trial Attorney, OBA No. 21216
U.S. Equal Employment Opportunity
Commission, Oklahoma Area Office
215 Dean A. McGee, Ste.524,
Oklahoma City, Oklahoma 73102
Tel. No.: (405) 231-4363
Cell No. (405) 815-7303
Email: patrick.holman@eeoc.gov
**ATTORNEYS FOR PLAINTIFF EEOC**